IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| CHUCK BURAS,        PLAINTIFF, | § § § | CIVIL ACTION NO. |
| V. | § § § | 4:17-CV-0007 |
| PLAINS ALL AMERICAN PIPELINE, L.P.,        DEFENDANT. | § § § | JURY DEMANDED |

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE SENIOR UNITED STATES DISTRICT JUDGE:

**Plaintiff CHUCK BURAS ("Plaintiff")** files this Complaint and would respectfully show the Court as follows:

### PARTIES

1. Plaintiff is an individual who resides in Winkler County, Texas.

2. **Defendant PLAINS ALL AMERICAN PIPELINE, L.P. ("Defendant")** is a foreign limited partnership incorporated in Delaware with its principal place of business located in Houston, Texas. Defendant may be served with process through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E 7th Street, Suite 620, Austin, TX 78701-3218.

### JURISDICTION AND VENUE

1. Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has federal question jurisdiction because the action arises under Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §12117(a).

2. Venue is proper in the U.S. District Court for the Western District of Texas, Pecos Division pursuant to 28 U.S.C. §1391(b) because the unlawful practices alleged below were committed therein.

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

3. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Plaintiff files this suit within (90) days of receiving a Notice of Right to Sue from the EEOC.

## CONDITIONS PRECEDENT

4. All conditions precedent have been performed or have occurred.

## FACTS

5. Defendant operates approximately 18,900 miles of active crude oil and natural gas liquids (NGL) pipelines and gathering systems.

6. On or about January 6, 2009, Plaintiff started working for Defendant as an Instrumentation & Electrical (I & E) Technician. One of the main job duties of this position is to perform maintenance of and assess the instrumentation and electrical equipment to ensure it is safe and reliable for operation.

7. Defendant uses a satellite system called SCADA to monitor and control its pipeline systems. SCADA stands for Supervisory Control and Data Acquisition. A pipeline block valve location is a fenced in area where the pipe comes out of the ground so that a valve can be put on it. Valves are used to isolate sections of pipe in case of oil leaks to the main line and/or to assist with adding a line to the main line and other matters.

8. Valve locations may be in remote locations with no access to electricity. Photovoltaic batteries and solar panels are installed to provide electricity to the SCADA system. If the satellite reports a power failure, a technician, such as Plaintiff is usually sent out to check it.

9. Plaintiff has over forty-five (45) years of electrical experience.

10. Plaintiff has a history of panic attacks and was first prescribed medication for them in August 2013.

11. Plaintiff disclosed the medication and his condition to his supervisor Ron Chastain and the former Superintendent Brandon Atkins. Atkins replied that the instructions are on the bottle and for Plaintiff to just do what the bottle says.

12. During his employment, Plaintiff frequently worked long hours and was on call.

13. On Wednesday, August 25, 2015, Plaintiff worked from approximately 6:00 a.m. to 9:00 p.m. He was called out again at approximately 10:00 p.m., and worked until approximately 2:00 a.m. He had worked approximately 43 hours in three days.

14. The next morning, Plaintiff reported to work as scheduled and started having a panic attack around 7:30 am.

15. Plaintiff emailed his management team, specifically Jimmy Bryant, Luis Zubiate, Bill Baird, Maria Salgado, Bradford Fivecoat, and Ron Chastain, to tell them that he was "burned out" and going home sick, and would not be reached until midday on Saturday. He stated that he would not be able to be reached until midday Saturday because he knew that he just needed a couple of days off to rest.

16. On Saturday, Plaintiff turned his cell phone back on, but he was not called out to work over the weekend. Nor did he receive any phone calls on his home phone.

17. When Plaintiff came into work on Monday, August 31, Mr. Chastain escorted him to a meeting in Mr. Baird's office. Mr. Baird, Jimmy Bryant, the District Superintendent, and Marco Martinez were also present. Plaintiff's immediate supervisor Luis Zubiate was not present. Mr. Bryant told Plaintiff that turning off his cell phone put them in a bind. Plaintiff told them that he had had anxiety and a panic attack and being on call would not allow him to recover.

18. At the end of the meeting, Plaintiff was told that he was being sent home with three days paid leave while Houston (corporate headquarters) decided what to do.

19. On Wednesday, September 2, Mr. Chastain called Plaintiff on his home phone to tell him that Houston decided to terminate him. Plaintiff was not given any reason for his termination.

20. Plaintiff had a good attendance record and had sick leave available at the time of his termination. In fact, in six years of employment, Plaintiff took only 32 hours of sick leave.

21. A week later, Plaintiff called Defendant's human resources department to get a reason for his termination. Human Resources Manager Toni Graham told him that his termination was an "involuntary separation due to performance."

22. Plaintiff filed for unemployment.

23. Human Resources Coordinator Kelley Dunlavy stated in an email to the Texas Workforce Commission (TWC) that Plaintiff was terminated "for refusing to work a scheduled shift." She also referenced the email he had sent, but she did not provide a copy of it, and she told the TWC that Plaintiff said he would not be available for work from Wednesday through Saturday and "did not provide a reason for refusing during that scheduled time frame."

24. After an administrative hearing, Plaintiff was approved for unemployment benefits because the Appeals Tribunal concluded that he was absent due to personal illness, which does not constitute misconduct.

25. Since his termination, Plaintiff has been treated by a psychiatrist for his panic and anxiety. Additionally, Plaintiff continues to be treated by his general doctor for panic and anxiety.

## DISABILITY DISCRIMINATION (ADA) – FAILURE TO ACCOMMODATE AND TERMINATION

26. Plaintiff incorporates by reference and re-alleges reference all of the forgoing and further alleges as follows:

27. Plaintiff is an employee within the meaning of the Americans with Disabilities Act (ADA). *See* 42 U.S.C. §12111(4).

28. Defendant is an employer within the meaning of the ADA. *See* 42 U.S.C. §12111(5).

29. Plaintiff is a qualified individual with a disability as defined by the ADA. *See* 42 U.S.C. §12102, 12111(8).

30. Plaintiff is otherwise qualified to perform the essential functions of his job as an Instrumentation & Electrical (I & E) Technician.

31. Plaintiff has been diagnosed with and suffers from panic and anxiety. During a panic attack, Plaintiff's heart rate accelerates and he has difficulty breathing and concentrating/focusing.

32. Defendant violated the ADA by failing to accommodate Plaintiff's disability by, among other things, not giving him a couple of sick days to rest and recover from his panic attack. In the alternative, Defendant intentionally discriminated against Plaintiff by firing him because of his disability.

33. In the event that Plaintiff's condition is not a disability as defined by the ADA, Defendant regarded him as disabled and/or he has a record of disability.

34. Defendant violated the ADA by failing to engage in the interactive process and terminating Plaintiff's employment.

35. To the extent that Defendant offers Plaintiff's performance as the reason for his termination, such reason is a pretext for discrimination.  Alternatively, the reason(s) given for Plaintiff's termination, while true, are only some of the reasons, and Plaintiff's disability was a motivating factor in the decision to terminate his employment.  In other words, Defendant had mixed motives for Plaintiff's termination.  Plaintiff is not required to elect to pursue a pretext or mixed motive claim until submission of the case to the jury.

36. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.  Defendant's conduct was willful and justifies an award of punitive damages.

## DAMAGES

37. Plaintiff was discharged from employment by Defendant.  Although he has diligently sought other employment, he has been unable to find a job with comparable pay and benefits.  In addition, Plaintiff has incurred expenses in seeking other employment.  Plaintiff suffered damage to his pension or retirement benefits.  Plaintiff seeks compensation for all back pay and lost wages and benefits, including loss of social security benefits.  Reinstatement to Plaintiff's previous position is impractical and unworkable.  Plaintiff suffered and seeks damages for pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.  Plaintiff is entitled to punitive damages because Defendants' actions were willful and/or deliberately indifferent to Plaintiff's federally protected rights.

## ATTORNEY'S FEES

38. Plaintiff was forced to engage counsel to protect his rights. Plaintiff is entitled to an award of attorney's fees and costs (including but not limited to an award of reasonable expert witness fees), both trial and appellate, under the ADA, 42 U.S.C. §12205.

## INTEREST

39. Plaintiff is entitled to prejudgment and post judgment interest at the highest lawful rate.

## JURY TRIAL DEMAND

40. Plaintiff demands a jury trial.

## PRAYER

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for the following:

a. Compensatory and punitive damages;

b. Back pay and front pay;

c. Attorneys' fees and costs;

d. Prejudgment and post-judgment interest;

e. Such other and further relief, at law or in equity, to which Plaintiff may show himself justly and lawfully entitled.

Respectfully submitted,

By: /s/ Holly B. Williams
_____
Holly B. Williams
Texas Bar No. 00788674
Naomi Cobb
Texas Bar No. 24094592

**WILLIAMS LAW FIRM, P.C.**
1209 W. Texas Avenue
Midland, TX 79701-6173
432-682-7800; 432-682-1112 (fax)
holly@williamslawpc.com
naomi@williamslawpc.com

**ATTORNEYS FOR PLAINTIFF
CHUCK BURAS**